UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANTONIA MASLO, on behalf of H.D. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:24-cv-00504-SRC |
| | ) |
| LELAND DUDEK, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

**Memorandum and Order**

Antonia Maslo, on behalf of H.D., seeks judicial review, under 42 U.S.C. § 405(g), of the Commissioner of Social Security's final decision denying H.D.'s application for supplemental security income under Title XVI of the Social Security Act. The Court affirms the Commissioner's decision.

**I.      Procedural history**

In January 2018, Maslo applied for supplemental security income on H.D.'s behalf. Tr. 244–49. The Social Security Administration denied the application on initial review. Tr. 164–76. Maslo requested a hearing before an administrative law judge. Tr. 182. After the hearing, the ALJ denied the application. Tr. 7–25. The Administration's Appeals Council denied Maslo's request for review. Tr. 1–6. Maslo sought review in the district court. Tr. 824–33. At the district court, the undersigned

---

[1] Leland Dudek became the Acting Commissioner of the Social Security Administration on February 17, 2025. Pursuant to Federal Rule of Civil Procedure 25(d), the Court "automatically substitute[s]" Leland Dudek for Martin O'Malley as the defendant in this suit. Neither party need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

reversed the Administration's decision and remanded the case because the ALJ failed to explain how she had considered certain regulatory factors.  Tr. 834–40.

On remand, an ALJ held a hearing, Tr. 767–94, after which the ALJ held, once again, that H.D. did not qualify as disabled, Tr. 744–56.  The ALJ's decision became final 60 days after the decision because the Appeals Council did not assume jurisdiction and Maslo didn't file any written exceptions to the decision with the Appeals Council.  *See* 20 C.F.R. §§ 404.984(a), 404.984(b), 404.984(c).

## II.     Standard for determining disability under the Act

Under the Act, an individual under the age of 18 qualifies as disabled if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  Additionally, "no individual under the age of 18 who engages in substantial gainful activity" qualifies as disabled.  42 U.S.C. § 1382c(a)(3)(C)(ii).

The Commissioner follows a three-step evaluation when evaluating whether the claimant has a disability.  20 C.F.R. § 416.924(a).  First, the Commissioner considers the claimant's activity.  *Id.*  If the claimant is engaged in substantial gainful activity, the claimant is not disabled.  *Id.*

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner evaluates the evidence to determine whether the claimant has a severe "impairment or combination of impairments."  *Id.*  The Commissioner will not find an individual disabled if he does not have a "medically determinable impairment," or if the impairment amounts to only "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations."  20 C.F.R. § 416.924(c).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled as long as the disability satisfies the duration requirement described above. 20 C.F.R. § 416.924(a). If not, the claimant is not disabled. *Id.*

### III. The ALJ's decision

Applying the foregoing, the ALJ concluded on remand that, since the application date, H.D. did not qualify as disabled. Tr. 755–56. At the first step, the ALJ found that H.D. was not engaged in substantial gainful activity since the application date. Tr. 748. At the second step, the ALJ found that H.D. had several severe impairments, including attention-deficit/hyperactivity disorder, autism-spectrum disorder, generalized anxiety disorder, post-traumatic stress disorder, oppositional-defiant disorder, unspecified-mood disorder, tic disorder, and mild persistent asthma. *Id.*

The ALJ spent the most time at the third step, where the ALJ concluded that H.D. did not qualify as disabled. Tr. 748–55. First, the ALJ found that H.D. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 748–49. The ALJ correctly stated that, to meet a listing for a mental impairment under Subpart P of Part 404 of Chapter III of Title 20 of the regulations, H.D.'s impairments must have caused "an extreme limitation in at least one, or marked limitation in at least two, of four broad areas of mental functioning": (1) "understanding, remembering, or applying information," (2) "concentrating, persisting, or maintaining pace," (3) "interacting with others," and (4) "adapting or managing oneself." Tr. 749. The ALJ concluded that H.D.'s impairments caused "no more than a

3

moderate limitation in the 'paragraph B' criteria areas." *Id.* And H.D. did not meet the listing for asthma because H.D. had not required any hospitalizations for respiratory issues. *Id.*

Still on the third step, the ALJ concluded that H.D. did not have an impairment or combination of impairments that *functionally* equaled the severity of the listings, either. Tr. 749–55. Using a "whole child" approach, the ALJ considered how H.D. functioned in six domains: (1) "acquiring and using information," (2) "attending and completing tasks," (3) "interacting and relating with others," (4) "moving about and manipulating objects," (5) "caring for yourself," and (6) "health and physical well-being." Tr. 749–50; *see also* 20 C.F.R. § 416.926a(b)(1). The ALJ found that H.D. had less than a "marked" limitation in the first, second, fifth, and sixth domains and no limitation at all in the fourth. Tr. 750. While the ALJ also found that H.D. had a "marked" limitation in the third domain, *see id.*, because H.D. did not have either (a) "marked" limitations in two domains or (b) an "extreme" limitation in any domain, the ALJ concluded that H.D. was not disabled, Tr. 755–56.

## IV.   Standard of review

When a claimant seeks judicial review of the Commissioner's decision, the Court determines whether substantial evidence on the record as a whole supports his or her decision. 42 U.S.C. §§ 1383(c)(3), 405(g). If it does, the Court must affirm the decision. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* Under this test, the Court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016) (citing *Crawford v. Colvin*, 809 F.3d 404, 408 (8th Cir. 2015)). The Court "do[es] not reweigh the evidence presented to the ALJ" and will

4

"defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id.* (quoting *Johnson v. Colvin*, 788 F.3d 870, 872 (8th Cir. 2015)).  The Court will not "reverse merely 'because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently.'"  *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 369 (8th Cir. 2016) (quoting *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015)).

V.     **Discussion**

Maslo raises two issues with the ALJ's decision.  First, Maslo contends that substantial evidence doesn't support the ALJ's findings with respect to the six domains relevant to whether H.D.'s impairments functionally equaled the listings.  Doc. 13 at 3–10.[2]  Second, Maslo contends that the ALJ failed to properly evaluate opinion evidence.  *Id.* at 10–12.  The Court considers the issues in turn.

      A.      **Whether substantial evidence supports the ALJ's findings with respect to the six domains**

On the first point, Maslo lodges two challenges to the ALJ's decision.  First, Maslo argues that the ALJ based the determinations on five-year-old opinions from state-agency doctors when other evidence in the record supported contrary findings.  *See, e.g.*, *id.* at 9 (arguing that "the ALJ's conclusions regarding [H.D.]'s domains, which was based on the opinions from 2018, cannot be said to be supported by substantial evidence because they fail to take into account all subsequent evidence in the record which includes now 6 years of additional evidence").  Second, Maslo argues that the ALJ's decision contradicted itself on the issue of whether H.D.'s condition fluctuated or remained consistent through the years.  *See, e.g.*, *id.* at 4 (arguing that the ALJ's statements about H.D.'s

---

[2] The Court cites to page numbers as assigned by CM/ECF.

improvements contradicted "the ALJ's own findings that the 'overall record remains largely consistent' with the opinions of" two doctors).  The Court disagrees with both arguments.

### 1.     Evidence that the ALJ relied on

The record refutes Maslo's first argument—that the ALJ based her findings on old evidence while ignoring other evidence in the record.  Maslo does not specify on which domain the ALJ failed to support her decision with substantial evidence, *see generally* doc. 13, so the Court goes through each domain.  In great detail, the ALJ described H.D.'s mental-health progress and regress from April 2017 through late July 2023, just over one month before the ALJ's decision.  *See* Tr. 751–53.  And the ALJ's analysis demonstrates that she properly considered the entire record, and substantial evidence in the record supports her decision with respect to each domain.

On the first two domains, acquiring/using information and attending/completing tasks, the ALJ weighed recent and relevant evidence, including changes in the level of special-education services that H.D. required over the years, the fact that H.D. met the goals of his individual education plan (IEP), and Maslo's testimony that H.D. earned all As, Bs, and Cs in school.  *See* Tr. 754; *see also* Tr. 636–66, 1178–87, 1359, 1519, 779.  This evidence sufficiently substantiates the ALJ's determination that H.D. had less than a marked limitation in these domains.  *See* 20 C.F.R. § 416.926a(e)(2)(i) (providing that, for a "marked" limitation to exist, the impairment must "interfere[] seriously with [the claimant's] ability to independently initiate, sustain, or complete activities"); 42 U.S.C. § 405(g) (providing that the Court must treat facts found by the ALJ and "supported by substantial evidence" as "conclusive").

On the third domain, interacting and relating with others, substantial evidence supports the ALJ's determination that H.D. had a "marked," but not "extreme," limitation.  On this domain, the ALJ explicitly *declined* to limit her review of the evidence to the 2018 conclusions of the

6

state-agency doctors and rejected those conclusions instead.  *See* Tr. 755 (rejecting the doctors' findings "that [H.D.] has less than marked limitations in all functional domains" because "some adjustments are appropriate" in light of "further development of the record").  To support her finding of a "marked" limitation, the ALJ relied on evidence throughout the record, including H.D.'s "episodic periods of aggressive behavior," Tr. 755, but also his ability to control his behavior with proper amounts of medication, a teacher's note that H.D. was "such a sweet friend," Tr. 754, and another teacher's acknowledgement that H.D. typically behaved well, *see id.  See also* Tr. 1573, 951.  Thus, substantial evidence supports the ALJ's determination that H.D.'s impairment didn't rise to an "extreme," limitation, i.e., one that "interferes very seriously with" the claimant's "ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(i).

On the fourth domain, moving about and manipulating objects, substantial evidence supports the ALJ's determination that H.D. had no limitation.  Again here, the ALJ did not confine herself to the 2018 findings of the state-agency doctors.  On the contrary, the ALJ considered a teacher's more-recent indications that H.D. struggled with hand-eye coordination and fine and gross motor skills.  *See* Tr. 754; *see also* Tr. 953.  And the ALJ pointed to Maslo's own admission that H.D. had no physical issues and the fact that H.D.'s IEP made no accommodations for physical education.  *See* Tr. 754; *see also* Tr. 787, 1597, 1635, 1678, 1715, 1757.  The ALJ also supported her finding with evidence that H.D.'s physical examinations "have not revealed any significant ongoing issues."  Tr. 754; *see also* Tr. 585, 593, 600, 660, 664, 1061, 1164, 1174.  And so the evidence that the ALJ cited substantially supports her finding that H.D. had no limitation on this domain.

On the fifth domain, caring for yourself, the ALJ concluded that, despite some "difficulty managing aggressive and disruptive behaviors when his medication is not balanced properly," H.D. did not display issues with his behavior after he properly adjusted his medication intake.  Tr. 754.

7

Substantial evidence in the record—evidence from throughout the period at issue—supports this conclusion and, in turn, the ALJ's determination that H.D. suffered from less than a "marked" limitation in this domain.  *See, e.g.*, Tr. 1370, 1381, 1392, 1414, 1425, 1449, 1469, 1488, 1519–20.

Finally on the sixth domain, health and physical well-being, the ALJ again considered evidence far beyond the 2018 findings of state-agency doctors.  The ALJ instead relied on evidence that, despite H.D.'s asthma diagnosis, H.D. had normal respiratory examinations even during periods of illness.  Tr. 754; *see also* Tr. 467, 605, 1073, 1092, 1104.  And the ALJ relied on evidence that, although H.D. complained of some medication side effects, he generally denied side effects and did not have any significant ongoing issues in his physical examinations.  Tr. 754.; *see also* Tr. 1338, 585, 593, 600, 664, 1061, 1164, 1174.  Substantial evidence thus supports the ALJ's determination that H.D. had less than a marked limitation in this domain.

At bottom, Maslo spends most of her brief pointing to pieces of evidence in the record that would have supported a different result.  *See generally* doc. 13.  That doesn't do enough to support a reversal.  *See KKC*, 818 F.3d at 369 (holding that the Court will not "reverse merely 'because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently'" (quoting *Andrews*, 791 F.3d at 928)).  And because substantial evidence supports the ALJ's findings for each domain, the Court rejects Maslo's arguments on this point.

### 2. Alleged contradiction in the ALJ's findings

Maslo argues that the Court should reverse the ALJ's decision because "the ALJ's statements that [H.D.]'s conditions have changed over time are inconsistent with the ALJ's finding that [H.D.]'s limitations have remained the same" since 2018.  Doc. 13 at 9.  As discussed below, Maslo's argument misconstrues the ALJ's findings and does not provide a basis for reversal.

8

Under the proper standard of review, in the face of determinations supported by substantial evidence, the Court "may neither pick nits nor accept an appellant's invitation to rely upon perceived inconsistencies" in the Commissioner's decision. *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) (per curiam). And Maslo's argument "pick[s] nits." *Id.* Contrary to Maslo's assertion, the ALJ did not hold that H.D.'s limitations "remained the same" throughout the years, doc. 13 at 9. Instead, the ALJ held that the record remained "largely consistent" across the years, with some changes because of "further development of the record." Tr. 754. The Court rejects Maslo's contention that a nonexistent inconsistency provides a basis for reversal.

### B.     Whether the ALJ failed to properly evaluate opinion evidence

Maslo argues that the ALJ failed to adequately articulate how she considered the regulatory factors of consistency and supportability when evaluating the opinions of state-agency consultants Raphael Smith, Psy.D. and Judee Bland, M.D. *See* doc. 13 at 11. The Court disagrees.

The applicable regulations require the Commissioner to consider medical opinions and prior administrative medical findings. They say:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in [later subsections of the regulations], as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency . . . .

20 C.F.R. § 404.1520c(a). The regulation describes the supportability factor in this way:

> The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1). And it describes the consistency factor in this way:

9

> The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(2).  The regulations require the ALJ to "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings."  20 C.F.R. § 404.1520c(b)(2).

Here, the ALJ adequately explained how she considered the supportability and consistency factors when she gave evidentiary weight to the opinions of Drs. Smith and Bland.  On supportability, the ALJ explicitly discussed the evidentiary support and explanations on which Drs. Smith and Bland relied, including H.D.'s prior incidents of aggression, H.D.'s IQ score, notations that H.D. was doing well in school, and H.D.'s improved ability to regulate his emotions.  Tr. 755.  And on consistency, the ALJ backed up her use of the opinions by assessing whether those opinions comported with other evidence in the record.  *See id.*  In fact, as a result of the ALJ's analysis on consistency, the ALJ decided to diverge from the state-agency doctors' findings and find that, "upon further development of the record," H.D. had a "marked" limitation in interacting with others.  *Id.*  Maslo's contention that the ALJ failed to articulate her consideration of these factors lacks merit.

## VI. Conclusion

For the reasons explained above, the Court affirms the Commissioner's decision and dismisses, with prejudice, Maslo's [1] Complaint.  A separate Judgment accompanies this Memorandum and Order.

So ordered this 21st day of March 2025.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE